RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE 9/28/06
BY ____

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| LINDA SPILLERS, ET AL. | CIVIL ACTION NO. 01-2095 |
| VERSUS | JUDGE DONALD E. WALTER |
| AMERICAN HOME PRODUCTS CORPORATION | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before this Court are Motions in Limine to Exclude (1) Evidence of Medical Conditions Not Experienced by Plaintiff Linda Spillers [Doc. #73], (2) Evidence of the Hemorrhagic Stroke Project ("HSP") [Doc. #74] and (3) Evidence Related to the Korean Study [Doc. #76], filed on behalf of defendant, Wyeth, formerly known as American Home Products Corporation, wherein defendant asserts that such evidence is irrelevant as it relates to the causal link between the ingestion of phenylpropanolamine ("PPA")-containing products and the occurrence of hemorrhagic stroke, and plaintiff, Linda Spillers, undisputedly suffered an ischemic stroke. Plaintiffs oppose these motions.

Plaintiff, Linda Spillers, brings this action under the Louisiana Products Liability Act (the "LPLA"), La. R.S. 9:2800.51, et seq., against defendant, Wyeth, alleging that she suffered an ischemic stroke as a result of ingesting PPA-containing cough and cold products manufactured by Wyeth. See Pretrial Order, p. 2.

The LPLA provides the exclusive theories of liability for manufacturers for damage allegedly caused by their products. See La. R.S. 9:2800.52. Federal Rule of Evidence 401 provides that relevant evidence is evidence that tends to make the existence of a fact more or less probable than without the evidence. Under the LPLA, it is the causal link between the allegedly defective product

and the "claimant's damage" that is relevant. See La. R.S. 9:2800.56; see also La. R.S. 9:2800.58. For the reasons stated below, this Court finds that evidence related to causation as between hemorrhagic stroke and the ingestion of PPA-containing products is irrelevant to the case sub judice, and defendant's Motions in Limine [Doc. #s 73, 74 & 76] are **GRANTED**.

In In re Phenylpropanolamine Products Liability Litigation, 289 F.Supp.2d 1230, *18 (W.D.Wash. 2003), within the context of ruling on Daubert motions, the PPA Multi-District Litigation ("MDL") Judge Barbara Rothstein found the HSP to be admissible as scientifically *reliable* evidence, subject to cross-examination, upon which experts could base their opinions. The Court does not read Judge Rothstein's Order to address the *relevance* of such evidence as to each individual plaintiff. Accordingly, that is for this Court to determine.

The parties have stipulated that Linda Spillers suffered an ischemic stroke. The evidence before this Court shows that neither the HSP nor the Korean Study addressed the issue of causation with regard to ingestion of PPA-containing products and ischemic stroke. In fact, both studies specifically excluded ischemic stroke patients. Rather, both the HSP, as the name implies, and the Korean Study, were epidemiologic studies that dealt solely with hemorrhagic stroke.

This Court has found no Fifth Circuit jurisprudence regarding the relevance of hemorrhagic stroke causation to ischemic stroke causation. The only guidance this Court has comes from the Eleventh Circuit in Rider v. Sandoz Pharmaceuticals Corp., 295 F.3d 1194 (11th Cir. 2002). In Rider, supra, the Court examined whether the district court had abused its discretion in denying admission of the testimony of the plaintiffs' five expert witnesses offered to prove causation. The plaintiffs in Rider, supra, had suffered hemorrhagic strokes allegedly as a result of their ingestion of Parlodel which contains bromocriptine, an ergot alkaloid compound, as an active ingredient. The

Rider Court aptly explained why evidence that bromocriptine caused *ischemic* stroke did not show that bromocriptine caused *hemorrhagic* stroke:

> [P]laintiffs argue that because there is some evidence that bromocriptine causes ischemic stroke, it also causes hemorrhagic stroke. This is the most untenable link in the causal chain. Strokes are broadly classified into two categories: ischemic and hemorrhagic. Ischemic strokes occur as a result of lack of blood flow to the brain. Hemorrhagic strokes occur as a result of bleeding within the brain. Thus, although the two conditions share a name, they involve a wholly different biological mechanism. The evidence that suggests that Parlodel may cause ischemic stroke does not apply to situations involving hemorrhagic stroke. This is a "leap of faith" supported by little more than the fact that both conditions are commonly called strokes. Plaintiffs argue that as a result of the vasoconstriction caused by Parlodel, blood pressure may increase to the point that blood vessels in the brain rupture. Plaintiffs have offered no reliable evidence that Parlodel increases blood pressure to such dangerous levels. Even if they had, they failed to offer proof of how such an increase in blood pressure can precipitate a hemorrhagic stroke.

Rider, 295 F.3d at 1220.

Following the reasoning of the Rider Court (in reverse), this Court finds that evidence suggesting that PPA-containing products may cause *hemorrhagic* stroke does not apply to situations involving *ischemic* stroke. Similarly, evidence suggesting that PPA-containing products may cause medication conditions not experienced by Linda Spillers does not apply to situations involving ischemic stroke alone. Accordingly, defendant's Motions in Limine asking this Court to exclude evidence of the HSP, the Korean Study and that relating to other medical conditions not experienced by Linda Spillers [Doc. #s 73, 74 & 76] are **GRANTED**.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 28 day of September, 2006.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE